Good morning, counsel. Good morning. John DiStefano for the plaintiffs. The issue in this case is whether the Federal Copyright Act expressly preempts a right of publicity claim arising from the commercial exploitation of an NCAA student-athlete's name and likeness when the defendant sells their photographs online. Let me ask you this, counsel. This is obviously a challenging question and one that has significant commercial and other implications. You seem to be relying primarily on the Downing case, Downing v. Abercrombie & Fitch. But in that case, they clearly commercially exploited the images involved. They created new products that exactly copied what these surfers were doing and the like. In this case, if I understand the allegations correctly, you have student-athlete basketball players. There are photographs, disqua photographs, and clearly pictorial images of that nature. There's no question that that's covered by the Copyright Act, is there? The photographs themselves are covered by the Copyright Act. But to take it back to Downing, the phrase that I would draw to your attention is on page 1003. The content of the protected right must fall within the subject matter of copyright. The content or the use? The content of the right. Okay, you've got a photograph. Whether it's copyrighted or something else, it's still a photograph. No, but the protected right here is not the photograph. It's the image and likeness. And the authorities are uniform on this, not just Downing. Nimmer, McCarthy, Patry, McCarthy says the picture is not the person. Patry says the gravamen of the claim is the appropriation of the individual's identity apart from a given fixation, even though a given fixation may give rise to the claim. And Downing? So is it your position that a photograph, undoctored photograph, is essentially uncopyrightable, and therefore doesn't preempt your client's publicity right? Is that correct? No. What's not copyrightable is someone's likeness, their physical features, their identity. And this is where the confusion arises because there are some forms of copyrighted works that contain copyrightable works by the plaintiff in the form of a performance. A performance is a work. A person is not a work. The Copyright Act applies to, governs works, whether or not they're copyrightable. But counsel, how do you, you know, I get your point if you have a play or something like that. You're saying that you've got to have that in order to have it protected. And I don't see any support in the text of the Copyright Act that suggests that a pictorial work, as defined in the Copyright Act, does not include a photograph per se. What evidence, what case law would you cite me to that says to the contrary? Well, the established case law, the established understanding of rights of publicity as reflected in Comedy 3. I'm not talking about publicity. I'm talking about the Copyright Act. Is there a case that you can cite to me that says that a photograph is not included in the word pictorial work, which is a defined term in the Copyright Act? No, a photograph is included under pictorial work. Just like the video games in Keller are copyrighted. Okay. But what it seems to me that your argument, your best argument, is it's not the photograph. It's the use to which it is put that creates the problem for a copyright holder. If your client's photographs were used to market a jersey or to copy their jerseys and sell them and use their names, hey, that's downing. But I don't understand your position that for the NCAA to simply have the photograph for use by them, but not as a commercial activity, is in any way outside the bounds of the Copyright Act. Because the merchandising of a copyrightable work is still merchandising. You're saying if you have a copyright of a photograph and you sell it for a small amount of money, that in and of itself is a commercial use under Downing? Is that your position? Under Downing, under Keller, under Comedy 3, going all the way back to the Christie Brinkley case, right after the enactment of Section 301. And Factors also, Factors addressed Elvis Presley posters right after the enactment of 301. I just want to be sure I understand your argument. I thought your argument was based on the fact that if MP3, whatever the name is, what they did was in order to, they say, we have these copyrighted photographs. We make them available for limited purposes and we'll show you the photographs. In effect, showing them online, that the showing of the photographs for the purpose of, for that limited purpose is not protected. It's the entirety of the use here, which is the marketing and sale of copies of the photographs for personal use as decorative merchandise, as items, just like posters. Just so I understand your position, though, if I'm a freelance photographer and I take a picture of a young Afghani woman with striking eyes and I have this photograph and I say to myself, you know what, I think National Geographic might want to have this photograph for their upcoming issue on Afghanistan. How would I do that transaction? Would I have to get her permission to sell it to National Geographic? Well, I think, you know, you can't assume that the Copyright Act is the only protection that photographers have for the use of their work. Let's get back to my question. I take a picture of this woman. National Geographic is running a story on Afghanistan. I think it would be great for their cover. I'm a freelance photographer. So first, when I take the picture, do I have the copyright over that picture? You have the copyright. Okay, so now I want to sell that photograph to National Geographic to put it in their magazine. Can I, under the Copyright Act, may I do that? Yes. And can she block it? No, I don't think that's a commercial use in this sense. But I'm selling it to National Geographic. Why isn't that commercial? Because there's a broad range of uses of a copyright, including licensing and reproduction, that are outside of this very narrow type of commercial use we're talking about, which is the commodification, the mass-produced merchandising of a student-athlete's likeness standing alone. But if the National Geographic, you know, back in the days when people bought magazines, I mean, there would be millions of copies of that. And National Geographic is news that would be protected by the First Amendment. But there's a First Amendment issue to it, but not copyright? I'm just trying to follow. It's not a preemption issue. The Copyright Act, I mean, is a right to exclude, but the right to use is subject to certain external limitations. But who could block me in that situation? Just so I understand, I have this photograph of this woman. I want to sell it to National Geographic. National Geographic is going to put on the cover of 10 million magazines. Are you saying that I don't have to get her permission, the young woman's permission, to engage in that transaction? Correct, because it wouldn't be a valid right of publicity claim. How is that any different than this case? Because that's a compelling – they're reporting, expressing matters in the public interest. Okay, but now all of a sudden we're – that's outside of copyright, whether something is – But that's exactly why that photographer can license the image to National Geographic. And, frankly, too, if you look at the – I mean, the right of publicity statutes and laws that are around, most of them would exclude – have exemptions for purely editorial use like that. What if that woman wanted to – or she was contacted by Ivanka Trump and wanted to model something that he had, a handbag maybe, and – I think if it were being produced in a purely commodified merchandising form, for decorative purposes, very possibly. But that's not a preemption issue. That's not a preemption issue either way. There's a consistent – the case law is consistent recognizing the right to assert a publicity interest in a copyrighted work and to accept the district court's position here that it's limited to advertising uses would go directly against Keller, which expressly said those student athletes in the game were not claiming there was any false endorsement. I just – I'm having trouble getting my practical head around this. I just – commercial exploitation I get. That, I think, is pretty clear. But in this case, you're saying that the very limited use, as I understand it, that the NCAA puts these two is enough of a commercial exploitation that it's not copyrightable. Is that right? No. It's not the way that the exploitation is copyrightable. It's whether or not it exploits the likeness and identity of the individual in the photograph, which is not copyrightable. You're saying that any athlete in any sport, if somebody takes a picture of them, that simply can't be copyrighted because the person has a right of publicity. The photograph can be copyrighted, but that's not dispositive of the preemption question. Why? Because time and again the cases say you look at the use of the likeness as opposed to the use of the photograph, and when you're selling trading cards – Back to what my original point was, which is it's the use of the image, not the fact that the image itself might be copyrightable that is your strongest suit. Yes. Right? Yes. Okay. So what we're really talking about here then is is the use that the NCAA made of these two basketball players' pictures enough to take it into the Downing situation. Is that right? Well, Ed, I think you've got a line of authority. KNB Enterprises involved the sale of photographs. When you're just purely selling photographs as merchandise that exploit the identity of the people depicted, that that's a commercial use and, you know, it's neither protected by the First Amendment nor is it preempted. And it's irrelevant that the agreement that's made by the First Amendment photograph indicates that it could only be used – there's a single copy of the image could only be used for non-commercial art use. Well, that shows you exactly the merchandising purpose that's at issue here, that there is – and, again, I think that's more relevant to their First Amendment defense, to be honest. But what gives rise to the claim is the fact that they're selling this as poster art, as a desktop background, as digital goods. That's all. And, you know, I think – I'm just trying to understand, what is the copyright worth? The fact that the NCAA and then their licensee has this copyright, what is it worth? They can't do anything with it. They can do lots of things. Copyright of this picture. We're saying they can't do – What can they do with it? One thing, which is – oh, excuse me. Go ahead. There's a narrow spectrum of right-of-publicity claims that show you what they can't do with it, which is to, you know, mass-market copies, for one thing, and use it for advertising purposes for another. But they're free to license it for all kinds of other editorial purposes. They're also free to reach agreements with students on commercial projects, which they do. When – does the record indicate whether these two athletes signed anything with the NCAA regarding the use of their photographs? There's no such signature in the record. The defendant in its answer admits that they never requested the defendant to, you know, to commercially exploit their images. And if you look at the NCAA rules, this is, you know, another factor on the First Amendment side. But to begin with, at a minimum, the rules establish a baseline of non-consent to the commercial exploitation of the student-athletes. Nowhere in the rules does it say that anyone can just – the rules that apply to these athletes, when they stepped on the field in 2000, 2001, that they were – that the NCAA could sell their photographs. So – I guess I'm still struggling with what you can do with this. My colleague asked what you can do. But they have these pictures of these young athletes. Can you give us an example of something they can do that would not offend your right of publicity claim? Non-commercial use. Okay, give me an example. What's a non-commercial use? They've got these pictures. They don't need them for anything. It's the NCAA. They like to get – they like to have people excited about the student-athletes. It gives them better futures, et cetera, et cetera. Why don't you just keep them in a vault? The NCAA has many non-profit purposes that it serves. And, like, you know, fostering the spirit of athletics, the history of these sports. Yeah, and – How would you do that? So I think if they were to use – use the photographs in editorial ways. Like what? Example. Put it in a student newspaper? Sure. And they do. We're not attacking news-related uses. What about the Los Angeles Times? They put that in the Los Angeles Times? Sure. What about, you know, a magazine, for example, that they give to people who apply to the university? You know, for promotional purposes? Yes. I think, you know, that might turn on the rules. But, you know, that might be a slightly different – I mean, I think if they're just illustrating the nature of their athletic program, that would be one thing. But here, you know, you have a very special – this is how narrow the claim is. A special category of individuals who step on the field of the understanding that they won't be commercialized. Get serious. You're telling me that a college athlete doesn't think that he or she is going to be commercialized? What about ESPN? What about their futures? They want to be commercialized. They want to have their names out there. The NCAA is – in the O'Bannon litigation, they're adamant on the point that they do not commercialize the name, images, and likenesses of their students. I'm talking about the attitude of the student athletes. I thought you said that they don't anticipate they're going to be commercialized. I think that's humbug. Their expectation is, under the rules of the NCAA, that they're not going to be put on products used to promote other things. The bottom line is they want their images out there. They want them because that helps them get NBA or if they're playing football, you know, NFL contracts. They want to be known. They want – the premise of college sports is they're getting – the product they're standing for is amateurism, and they're not allowed to do those things to preserve their eligibility. They have to refrain. You're conflating what I'm talking about. My point is I think you've agreed that there's a narrow band of activities that the NCAA can use these pictures for. You're pretty squishy on what that might be, and I'm simply saying that the concept that these things have to be, you know, put in a vault, can't be used in anything where there's any remuneration involved. It doesn't comport with reality, and it certainly doesn't comport with a copyright act. It's a broad band of lots of editorial and noncommercial uses that's not part of copyright preemption doctrine. It really goes to first amendment issues. The agreement that – The record's incomplete on discovery. Excuse me. The agreement also, as I understand it, precludes the use of these photographs in connection with or as an express or implied endorsement of any product or service. So that is to me to be taking out of commercial exploitation, and you're back to the fact that what you seem to be alleging is that simply because the copyright holder is saying, I have these photographs. Here they are. Are you interested in buying them solely for the purpose, a single copy for noncommercial art use? Just that is a violation. Yes, it's the commercial sale that's the violation. I see my time is running out. May I reserve? Sure, absolutely. If they wanted to give it away for nothing, it would be okay? I'm sorry? If they wanted to give it away for nothing, that would be okay? Yes. Good of you. Good morning. Good morning. May it please the Court. Kelly Sager on behalf of T3 Media. What the plaintiffs essentially are asking this Court to do is to carve out a lesser protection for photographs under the Copyright Act than they admit apply to any other kind of copyrighted work. There's no protection or there's no support in the Copyright Act or any of the case law that would carve out a different level of copyright rights for photographs than they would for anything else. The Copyright Act expressly gives copyright owners, including owners of photograph copyrights, the right to distribute the copy, to reproduce. Those are the fundamental rights under Section 106 of the Copyright Act. And what the plaintiffs say is, oh, you can do what you want with these copyrighted photos as long as you don't do those things, as long as you don't distribute them, as long as you don't make copies of them or more than a certain number of copies, the number of which is completely unclear from the argument. Ms. Sager, the copy is charged for the photographs, the NCAA photographs. Does the record indicate how much was charged for these photographs? I believe they're either $15 or $20, Your Honor, depending on the time period. Both on the disk that we provided to the court that's in the record and in the exhibits of the declarations that we provided to the court indicate precisely how the payit.com site worked. And when someone buys one of these photographs, a colleague has referred to an agreement designed with any case digitally. Was that agreement designed with any case law designed to avoid commercialization that might trigger this right of publicity? Yes, and first to be clear, what is sold is not the actual photograph. What is sold is a license, a limited non-exclusive copyright license is given to the person from the payit.com site in exchange for a fee. The agreement says that the only thing that the photograph can be used for, that the limited copyright license, is solely for personal use and may not be used for any commercial use. So the person signing the license agreement and getting the photograph downloaded in exchange is agreeing that they will not use that for any other purpose other than their own personal use. Is it sold exclusively digitally, in other words, over the Internet, or is there some site you can go to personally and walk into a store and buy one of these? Right now, these were sold digitally. During the portion of time when the record was in effect, these were sold digitally. In past years, I think the NCAA licensed actual hard copy photographs. Let's just say hypothetically that the NCAA became aware of Mr. Brown somewhere for double the amount of copies. In short, in violation of the copyright act. What role, if any, would that play in the process about the plaintiff's claims that their images are being exploited in a way that is not contemplated by the Copyright Act? If the licensee was violating the terms of the license agreement, then either T3 Media as the exclusive licensor or the NCAA as the original copyright owner would have a copyright infringement action against that licensee if the licensee uses the photograph for some purpose that the license doesn't permit. For example, then reselling it to use in an advertisement for a product, for example. That's not permitted by the license, and the licensee would be in breach of the contract and be violating the limited copyright license that is provided by the licensing agreement. Whose photograph would, I assume, would have a cause of action as well as a third-party beneficiary? I think that in that instance, if something is sold for commercial use to be put on a product, then there might very well be a right of publicity claim that the athlete or former athlete would have against the use of that image in connection with advertisements if they hadn't given permission for that use. That's not this case. There's no instance, no argument, no evidence that any of the plaintiffs or, frankly, any of the class members ever had their images used in connection with any commercial product. What the plaintiffs say instead is they call the actual photograph a commercial product or they want to treat it as if it's a commercial product. But the law in this circuit and case law across the country makes clear that expressive works and the use of people's images in expressive works is not a commercial product even if they actually result in income, nor would it be if they were used in a magazine or a newspaper in the questions that the panel was asking at closing counsel. That's not a commercial use merely because a newspaper may make money, we hope, by selling a newspaper. That doesn't transform it into a commercial use with respect to right of publicity rights. Does the amount of money that's paid, should that influence our view of whether the commercial use is being made? You've indicated that it was roughly $15 to $20 per photograph. What if it were $1,000 for the photograph? Would that make a difference? It doesn't make a difference. The copyright owner has the right to sell, to license, to distribute their copyrighted work, and as long as the use in question is nothing beyond the actual rights that the Exclusive Rights of the Copyright Act provides, those are preempted under the Copyright Act from any right of publicity claim. It's not the same thing as if they were taking the images of the plaintiffs and putting them on a T-shirt or sticking them on tennis shoes or something else to sell those products. That's downing, isn't it? That's downing. Precisely. And the problem with downing and some of the other cases at the plaintiff's site is they want to take some of the language from those cases without taking into account the facts on which those cases were based. Or they want to take cases that have recognized right of publicity claims, which we don't dispute that right of publicity claims exist, but the cases that they are relying on, by and large, don't talk about copyright preemption at all. Copyright preemption was never raised in Keller, and I'm familiar with that case since I argued in this circuit twice. Copyright preemption was never raised in Comedy 3. It was never raised in Zucchini, nor could it have been, frankly, because the Zucchini case predated the enactment or the effective date of Section 301A of the Copyright Act. So the Supreme Court, in saying that these right of publicity claims may exist in a case like Zucchini, wasn't taking into account Section 301A, and the lower courts actually tried to analyze it as a common-law copyright, which clearly would have been preempted under today's law because Section 301A was designed to get rid of claims like common-law copyright claims. But what Zucchini says, and in a very narrow decision, which the court, I think, uses the phrase entire act something like 10 times, if you're taking the entire act so that a person's entire ability to make a livelihood is impacted, then that may influence First Amendment issues. They don't discuss copyright or copyright preemption at all. If that case instead had involved a scenario where Mr. Zucchini, for example, today had himself shot out of a cannon and was videotaped, and a news station stole that videotape and put it on air, then Mr. Zucchini would have a copyright claim. If he sued for right of publicity, that claim would be preempted by the Copyright Act. His rights would rise out of the Copyright Act. If we agree with you and the lower court that the Copyright Act preempts the right of publicity claim, what, if anything, should we do with the First Amendment claims? Should we just ignore those because it's not necessary to deal with it? If the court agrees with the district court and the district court didn't reach some of the other issues because it found for us on the copyright preemption claim, this court need not reach all the other defenses that we raised, including the First Amendment. However, the court can, if it wants, take the opportunity to provide instruction that may be useful to lower courts in other cases, applying the strict scrutiny test that this court adopted in the Sarver case to a situation that is directly applicable here. If we did reach it, wouldn't it make more sense to send it back to the district court in the first instance to be able to develop the record more on that issue? There's no need to develop the record in the district court because that's an issue of law. The district court and this court has all the briefing fully before it. There's nothing else that would be necessary in terms of factual development or discovery in order to decide whether, first instance, strict scrutiny applies to a situation like this where you're talking about merely the distribution of a copyrighted photograph or whether there is a compelling interest that the plaintiffs have argued that would justify overcoming or meeting the standard that strict scrutiny would require. They haven't argued anything like Zucchini, where somebody's entire act or livelihood has been taken that might actually justify or rise to the level of justifying a compelling interest. They haven't argued that there was an implied endorsement of some product based on the uses here that might also justify some different standard being applied. They've simply said you've used our image in a photograph and the photographs you're making money on and we deserve the money from those. What if they made the argument we came from a background that our chance to make it big is in basketball and you're exploiting that. That's my whole life, but I can't do that. I don't have a life. Does that make any sense? There's certainly nothing pled in the complaint, Your Honor, or in the record that would suggest they have that argument. Hypothetically, if they did, there's nothing about the sale or copyright licenses or the licensing or sale of even actual photos that would preclude the plaintiffs from making a living as a basketball player or a football player or some other kind of athlete. That was the situation in Zucchini. His entire livelihood was being shot out of a cannon and people paying to come watch him. People don't not go watch football games or watch them on television or do anything else that would result in someone being able to pursue a career as a professional athlete because they have a photograph of that athlete. To the contrary, having things like photographs available to these athletes makes them more popular and makes people want to go see them. They buy the tickets to go to the games, but they're not precluded from having that livelihood because of a use like this. That's essentially what this Court found in the Sarver case. A bomb technician is a bomb technician. He was not precluded from being one because his life story might have been reflected in a feature film. And by the same token, someone who wants to be an athlete is not precluded from that by the fact that his image may be contained in a photograph that's licensed for copyright uses. I'm happy to answer any other questions that the panel may have. I think we have your point. Thank you very much. I also have some rebuttal time. Just a few points. First of all, the plaintiff's claim doesn't subordinate any certain type of work. It enforces well-established rights in the use of a mere likeness as opposed to a performance, which where we know preemption is established. With respect, I don't get anywhere with that argument because pictorial work is a defined term in the Copyright Act. You have to convince us that that doesn't mean a photograph to win that argument. I don't think you're going to get anywhere with that. Downing says the content of the protected right, which is our right, the right of publicity. The content of our right is not the photograph. And this is established. If you look at Downing. Downing rests on two cases that involve the use of a mere likeness, Brown v. Ames, the Fifth Circuit, and KNB. Both of those cases involve subscriptions to online photographs and KNB. Brown was the sale of posters. And these cases go all the way back. You're talking about upending decades of established law and understanding concerning the merchandising of athlete images as such, as posters, as trading cards, as products. That was done here, was there, in this case? Why is a poster different from a photograph? These are copies. You get a digital copy. There's no principal distinction. You just said we're overriding all this precedent because of posters, but that's not what this case is not about. KNB was digital images. This case is about downloading images off of a computer, correct? The sale of a copy. The sale of a copy for decorative use. That's a product. That's digital merchandise. That's a case that says someone cannot sell a photograph that they have the copyright on. One case. That's exactly what happened in KNB. They're allowing the use of these, just the photograph. In fact, in KNB, it was just the viewing of the photographs on the website. You're saying this is settled law. You really didn't need to even bring this case because you should have won below, right? The district court blew it because you had the law on your side and the district court dismissed it. Yeah, the right of publicity is not limited to advertising. Keller says that. Comedy 3 says that. It can't be. It includes merchandise, and sometimes merchandise is copyrighted, and all the video games, the posters, et cetera, are all copyrighted. Thank you. I'll submit. I appreciate the argument. Very helpful, and thank you both for your spirited arguments, and the case just argued is submitted.
judges: M. Smith, Owens, Korman